1

2

3

4

5

6                     UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8  MARIA ROSU,                          )
                                        )
9                      Petitioner,      )   Case No. C13-152-RSM-BAT
                                        )
10         v.                           )   **REPORT AND**
                                        )   **RECOMMENDATION**
11  NATHALIE AHSER, Field Office Director,  )
   Enforcement and Removal Operations,  )
12  Immigration and Customs Enforcement,  )
                                        )
13                     Respondent.      )
   ─────────────────────────────────────)

14         Petitioner Maria Rosu, an alien detained in connection with removal proceedings and

15  currently confined at the Northwest Detention Center, has filed a petition for writ of habeas

16  corpus under 28 U.S.C. § 2241, challenging the lawfulness of her pre-removal period detention

17  pursuant to 8 U.S.C. § 1226(c).  Dkt. No. 1.  Respondent has moved to dismiss this case, arguing

18  that petitioner is mandatorily detained under 8 U.S.C. § 1226(c) based on her 2001 conviction for

19  possession of a methamphetamine, for which she was sentenced to 18 months probation, and her

20  2003 conviction for delivery of methamphetamine, for which she was sentenced to 20 days in jail

21  (suspended) and 36 months probation.  Dkt. No. 13.

22         For the reasons set forth below, the Court recommends that petitioner's petition for writ

23  of habeas corpus be GRANTED, and respondent's motion to dismiss be DENIED.

REPORT AND RECOMMENDATION- 1

1

## I.       FACTUAL AND PROCEDURAL HISTORY

2      Petitioner was born in Romania and has been a lawful permanent resident of the United

3   States since May 4, 1984.  Administrative Record ("AR") L3.  On November 14, 2001, petitioner

4   was convicted in Multnomah County Circuit Court in Portland, Oregon of the offense of

5   possession of methamphetamine and was sentenced to 18 months probation.  AR L22-28.  On

6   November 18, 2003, petitioner was convicted in the same court of the offense of delivery of

7   methamphetamine and was sentenced to 20 days in jail (suspended) and 36 months probation.

8   AR R35-44.

9      On December 13, 2012, Immigration and Customs Enforcement ("ICE") served

10   petitioner with a Notice to Appear, charging her as removable from the United States under 8

11   U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony related to drug trafficking), 8 U.S.C. §

12   1182(a)(2)(B)(i) (offense related to a controlled substance).  AR L37-39.  ICE took petitioner

13   into custody and detained her without bond.  AR L25-26.  On January 23, 2013, the Immigration

14   Judge denied petitioner's request for a change in custody status, believing that petitioner was

15   subject to mandatory detention under 8 U.S.C. § 1226(c).  AR L73.  Petitioner remains detained

16   at the Northwest Detention Center.

17      Petitioner filed this habeas petition on January 25, 2013.  Dkt. No. 1.  She asserts that she

18   is not subject to mandatory detention under 8 U.S.C. § 1226(c) because she was not taken into

19   immigration custody when she was released from state custody, and is entitled to a bond hearing

20   pursuant to 8 U.S.C. § 1226(a).  Dkt. No. 1.  On February 28, 2013, respondent filed a return

21   memorandum and motion to dismiss.  Dkt. No. 13.  Petitioner filed a response on March  7,

22   2013.  Dkt. No. 16.

23

REPORT AND RECOMMENDATION- 2

## II.    DISCUSSION

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of aliens in removal proceedings.  Section 1226(a) grants the Attorney General discretionary authority to determine whether an alien should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the alien falls within one of the categories of aliens described in section 1226(c), for whom detention is mandatory.  8 U.S.C. § 1226(a), (c).  Pursuant to section 1226(c)(1),

> The Attorney General shall take into custody any alien who [has committed one of the specified criminal offenses] <u>when the alien is released</u>, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added).  "The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides . . . that release of the alien from custody is necessary" to protect a witness in a criminal matter.  8 U.S.C. § 1226(c)(2).  Unlike aliens who are detained under § 1226(a), aliens detained under § 1226(c) are not entitled to a bond hearing and are not provided the opportunity to show that their detention is unnecessary because they are not a danger to the community or a flight risk.  *Casas-Castrillon v. DHS*, 535 F.3d 942, 946 (9th Cir. 2008).

At issue is the meaning of the phrase "when the alien is released."  Petitioner argues that she is not subject to pre-removal period mandatory detention under 8 U.S.C. § 1226(c) because ICE did not take her into immigration custody when she was released from state custody, but took her into custody on December 13, 2012.  Therefore, petitioner asserts that she is eligible for release on bond while her immigration proceedings are pending pursuant to 8 U.S.C. § 1226(a). In support of this argument, petitioner cites several decisions from this Court which found –

REPORT AND RECOMMENDATION- 3

1    under the plain meaning of the statute – § 1226(c) requires mandatory detention only "when the

2    alien is released" from incarceration on the underlying offense.  *See Castillo v. ICE Field Office*

3    *Director*, __ F. Supp. 2d __, 2012 WL 5511716 (W.D. Wash. 2012); *Quezada-Bucio v. Ridge*,

4    317 F. Supp. 2d 1221 (W.D. Wash. 2004) (holding that "the mandatory detention statute, INA §

5    236(c), does not apply to aliens who have been taken into immigration custody several months or

6    years after they have been released from state custody"); *Pastor-Camarena v. Smith*, 977 F.

7    Supp. 1415 (W.D. Wash. 1997) (holding that the plain meaning of the statute indicates that 8

8    U.S.C. § 1226(c) applies to aliens immediately after release from custody, and not to aliens

9    released many years earlier).

10          Respondent argues that despite not being taken into immigration custody immediately

11    following her release from criminal custody relating to her methamphetamine conviction, she is

12    subject to mandatory detention under § 1226(c) and is not entitled to a bond hearing.

13    Respondent contends that the Court's decision in *Quezada-Bucio* was wrongly decided, and

14    urges the Court to consider the Fourth Circuit's decision in *Hosh v. Lucero*, 680 F.3d 375 (4th

15    Cir. 2012), which found the "when the alien is released" language to be ambiguous and deferred

16    to the BIA's interpretation of the statute in *Matter of Rojas*, 23 I & N Dec. 117, 125 (BIA 2001)

17    (holding that mandatory detention applies no matter when the alien is taken into custody).

18          In reviewing an agency's construction of a statute, courts apply the test set forth in

19    *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  A court

20    must first examine the text of the statute to determine whether Congress has spoken directly on

21    the issue.  *See Contract Management, Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 & n. 2 (9th Cir.

22    2006).  If the intent of Congress is clear from the text of the statute, a court need inquire no

23    further and must follow the expressed intent of Congress.  *Id.* at 1146-47.  If, however, the

REPORT AND RECOMMENDATION- 4

statute is silent or ambiguous on the specific issue, a court must determine whether the agency's interpretation is based on a permissible construction of the statute.  *Id*. at 1147.  If so, the Court defers to the agency's determination.  *Id*.

Although the Ninth Circuit has yet to rule on this issue, the phrase "when the alien is released" has been the subject of statutory interpretation in several previous cases, including two published decisions by this Court.  *See Quezada-Bucio*, 317 F. Supp. 2d at 1221; *Pastor-Camarena*, 977 F. Supp. at 1415; *see also Castillo*, __ F. Supp. 2d __, 2012 WL 5511716 *3; *Snegirev v. Asher*, 2013 WL 942607 (W.D. Wash. 2013).  In each case, the Court has reached the same conclusion.  "Interpreting this statutory language, this Court has repeatedly held that Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from state custody."  *Castillo*, __ F. Supp. 2d __, 2012 WL 5511716 at *3 (citing *Quezada-Bucio*, 317 F. Supp. 2d at 1228; *Pastor-Camarena*, 977 F. Supp. at 1417).  As the Court in *Quezada-Bucio* explained,

> 'the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release. *Alikhani*, 70 F. Supp. 2d at 1130. . . . [I]f Congress had intended for mandatory detention to apply to aliens at any time after they were released, it could easily have used the language 'after the alien is released," 'regardless of when the alien is released,' or other words to that effect.  Instead Congress chose to use the word 'when,' which connotes a much different meaning.

*Quezada-Bucio*, 317 F. Supp. 2d at 1230.  The Court further found that the legislative history demonstrates an intent for detention upon an alien's release.

> In explaining the various passages of IIRIRA, the legislature stated that mandatory detention was meant to apply "whenever such an alien is released from imprisonment, regardless of the circumstances of the release."  House Conf. Rpt. No. 104-828 at 210-11 (Sept. 24, 1996).  Presumably, with that comment, the legislature was seeking to thwart arguments by aliens that because they were subject to parole or other community supervision they could not be taken into immediate immigration detention because that would result in a violation of their imposed conditions.  The Court is not persuaded that the legislature was seeking

1    to justify mandatory immigration custody many months or even years after an
     alien had been released from state custody.

2    *Id.*

3           The Court is not persuaded by the Fourth Circuit's decision in *Hosh* to defer to the BIA's

4    interpretation of § 1226(c).  The Supreme Court has held that the federal courts should defer to

5    an agency decision only if the statute, "applying the normal 'tools of statutory construction,' is

6    ambiguous."  *INS v. St. Cyr*, 533 U.S. 289, 307 (2001) (citing *Chevron*, 467 U.S. at 843 n.9).  As

7    determined above, the Court need not defer to the BIA's interpretation of § 1226(c) because the

8    plain language of the statute is not ambiguous and clearly applies the mandatory detention

9    provision to those aliens who are detained upon release from criminal custody.  While

10   respondent submits that "when . . . released" is susceptible to another interpretation, this Court

11   will continue to rely on its plain, unambiguous meaning.  *See Castillo*, __ F. Supp. 2d __, 2012

12   WL 5511716 at *3; *Quezada-Bucio*, 317 F. Supp. 2d at 1228; *Pastor-Camarena*, 977 F. Supp. at

13   1417.  Accordingly, the Court finds that this statutory language does not provide respondent

14   license to hold petitioner in mandatory detention because she was not taken into immigration

15   custody when she was released from incarceration on the underlying offense.  Instead,

16   petitioner's pre-removal period detention is governed by § 1226(a), which authorizes an

17   Immigration Judge to release her on bond or conditional parole if she poses neither a flight risk

18   nor a danger to the community.  *See Matter of Patel*, 15 I&N Dec. 666 (BIA 1976).

19          Respondent also argues that the "when the alien is released" language in 8 U.S.C. §

20   1226(c) is "an aspirational or 'hortatory' deadline only," and thus does not limit the

21   government's ability to detain aliens in cases of noncompliance.  Citing various Supreme Court

22   decisions involving government deadlines, respondent contends that an agency does not lose its

23   power to act in cases of noncompliance unless the statute specifies a sanction for missing the

REPORT AND RECOMMENDATION- 6

1   deadline.  *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003); *United States v. James*

2   *Daniel Good Real Property*, 510 U.S. 43, 63 (1993); *Brock v. Pierce County*, 476 U.S. 253, 263

3   (1986); *French v. Edwards*, 80 U.S. 506, 511 (1872).  According to respondent, "[b]y ordering a

4   bond hearing conducted pursuant to section 1226(a), the Court would be improperly sanctioning

5   the government for missing a hortatory deadline by replacing one statutory scheme with

6   another."  Dkt. No. 13 at 10.

7        In *Hosh*, the Fourth Circuit agreed with this argument, finding that "§ 1226(c) does not

8   specify any consequence for the Government's failure to detain a criminal alien immediately

9   upon release, and therefore even if 'the duty is mandatory, the sanction for breach is not loss of

10  all later powers to act.'"  *Hosh*, 680 F.3d at 382 (quoting *United States v. Montalvo-Murillo*, 495

11  U.S. 711, 718 (1990)).  This Court has examined each of the cited cases, but fails to be

12  convinced that a plain reading of the "when . . . released" language would result in an improper

13  sanction against the government for failing to meet a hortatory deadline.

14       In *Montalvo-Murillo*, the Supreme Court considered whether the government was

15  required to release a criminal defendant after it failed to provide a detention hearing

16  "immediately upon the [suspect's] first appearance before a judicial officer" pursuant to 18

17  U.S.C. § 3142(f).  *Montalvo-Murillo*, 495 U.S. at 713-714.  The Supreme Court held that the

18  "failure to comply with the first appearance requirement does not defeat the Government's

19  authority to seek detention of the person charged."  *Id*. at 717.  *Montalvo-Murillo*, however, is

20  completely inapposite to the case at bar.  In that case, the defendant had argued that the failure to

21  provide a timely bond hearing required his immediate release even though the district court had

22  concluded "that no condition or combination of conditions reasonably would assure [his]

23  appearance or the safety of the community."  *Id*. at 716.  By contrast here, petitioner does not

REPORT AND RECOMMENDATION- 7

1  demand her immediate release nor does she seek to foreclose the government's ability to detain

2  her.  Rather, petitioner seeks an individualized bond hearing where she may show that she is not

3  a danger to the community or a flight risk.

4  　　　　As indicated above, § 1226(a) begins with the default premise that every alien detained

5  by the Attorney General is entitled to an individualized bond hearing before an Immigration

6  Judge unless the alien falls within the exception set forth in § 1226(c).  For the exception to

7  apply, two requirements must be met.  First, the alien must have committed an offense specified

8  in § 1226(c)(1)(A)-(D).  Second, the alien must have been taken into custody "when the alien is

9  released" from criminal custody.  8 U.S.C. § 1226(c).  Read together, these provisions

10  unambiguously provide for the release of aliens arrested for immigration violations on bond or

11  on their own recognizance, except for the limited class of aliens subject to mandatory detention.

12  　　　　The failure to detain a criminal alien "when . . . released" does not mean the government

13  has no power to act.  Aliens who are not subject to § 1226(c) are, by default, subject to pre-

14  removal period detention under § 1226(a), which prohibits the release of aliens who are a danger

15  to the community or a flight risk.  *See Matter of Patel*, 15 I&N Dec. at 666.

16  　　　　Thus, if this Court holds that petitioner is not subject to mandatory detention under §

17  1226(c) because ICE did not take her into custody when she was released from state custody,

18  such a ruling means that the Immigration Judge will conduct a bond hearing pursuant to §

19  1226(a), and petitioner will be released only if she shows by clear and convincing evidence that

20  she poses neither a danger to the community nor a flight risk.  Because the government retains

21  discretionary authority to detain criminal aliens under § 1226(a), a plain reading of § 1226(c)

22  does not result in a improper sanction on the government.

23

REPORT AND RECOMMENDATION- 8

### III.   CONCLUSION

Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c) because that section only requires mandatory detention "when the alien is released" from incarceration on the underlying offense.  Rather, petitioner's detention is governed by 8 U.S.C. § 1226(a) which authorizes an Immigration Judge to release her on bond or conditional parole if she poses neither a flight risk nor a danger to the community.  Therefore, the Court recommends that petitioner's petition for writ of habeas corpus be GRANTED, respondent's motion to dismiss be DENIED, and that petitioner be provided with an individualized bond hearing before an Immigration Judge pursuant to the general release terms of 8 U.S.C. § 1226(a).  A proposed Order accompanies this Report and Recommendation.

Any objections to this Recommendation must be filed and served upon all parties no later than **May 13, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **May 17, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this 22nd day of April, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 9